Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



MICHAEL BUCHANAN,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00112-CR

Appeal from the

346th District Court

of El Paso County, Texas

(TC# 20030D05546)




O P I N I O N

           This is an appeal from unauthorized use of a motor vehicle--enhanced by the
allegation of two prior felony convictions. The jury assessed punishment at fifteen years to
serve in the Institutional Division of the Texas Department of Criminal Justice and also
assessed a fine of $10,000. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           Robert Branham, a detective with the El Paso Police Department, testified that he
interviewed the complaining witness in this case, Sandra Norsworthy. During their meeting,
Branham took Norsworthy’s written statement. Branham obtained a prosecution statement
from Norsworthy. On October 23, 2003, Branham placed the identity of her vehicle, a 1993
Dodge Intrepid, into the NCIC/TCIC system as a stolen vehicle. Branham obtained a warrant
for Appellant on October 29, 2003 for the offense of unauthorized use of a motor vehicle.
           Inspector Juan Grajeda worked as a Custom’s Inspector at the Bridge of the Americas
for the Department of Homeland Security. On November 1, 2003, Grajeda came in contact
with the Appellant at the Bridge of the Americas. Appellant was the front passenger inside
the vehicle, a red Dodge Intrepid. Tomas Mendoza was the driver, and another individual
was in the rear seat. Inspector Grajeda verified the identity of the vehicle by running the
license plate and VIN numbers. The vehicle came back as NCIC hit stolen. Grajeda
questioned the driver about the car. Mendoza, the driver, said the vehicle belonged to the
Appellant’s stepdaughter. Grajeda verified the Appellant’s identity and questioned him
about the vehicle. Appellant said the vehicle belonged to his stepdaughter. Appellant was
having the car repaired in Juarez. Grajeda requested that Appellant furnish paperwork to
establish an actual vehicle repair. Appellant was unable to provide any paperwork
concerning repairs to the vehicle. Grajeda transferred the case investigation to the El Paso
Police Department.
           Officer Eduardo Lara worked for the El Paso Police Department and was assigned to
the Central Regional Command Patrol. On November 1, 2003, Officer Lara was dispatched
to 3600 East Paisano, the Bridge of the Americas. Appellant, Mendoza, and Woodruff were
being detained in a holding cell at the Bridge of the Americas. Officer Lara interviewed
Appellant, and he stated that the vehicle belonged to his stepdaughter and that he had
borrowed the vehicle. His stepdaughter had let him borrow the vehicle so he could get it
fixed. She was having problems with the vehicle. Officer Lara spoke with the driver of the
vehicle and concluded that the reason that he was driving the vehicle was because that
morning of November 1, Appellant and the other passenger had picked him up at his home. 
Appellant asked him if he could drive the vehicle because Appellant did not have a driver’s
license. Lara checked the three men that were in the car for outstanding warrants. Appellant
had an outstanding warrant from the El Paso Police Department for unauthorized use of a
motor vehicle. Lara took Appellant in front of a judge for his formal warnings. After that,
Lara went ahead and booked Appellant into the County Jail. The other two individuals in the
vehicle had been released at the scene.
           The complainant, Sandra Norsworthy, lived at 5509 Husky, El Paso, Texas. 
Norsworthy lived with her two sisters, three nephews, and three children. Norsworthy lived
in the same house for five years. Norsworthy worked at the Big 8 Food Store as a stocker. 
 Appellant is Norsworthy’s stepfather. Appellant had spent the night at Norsworthy’s home
during the previous three- to four-week period. Norsworthy allowed Appellant to stay over
the night of October 18 into October 19. On October 18, 2003, Norsworthy lent her vehicle
to her friend Jesus. Norsworthy said she knew that Jesus had returned the vehicle because
she saw it in the driveway when she went to take a shower on the morning of October 19,
2003. Norsworthy could not find the keys to her vehicle. Norsworthy’s friend Lorena took
her to work. At one in the afternoon, Norsworthy’s ex-husband picked her up from work. 
Norsworthy arrived about 1:30 p.m. Norsworthy’s car was gone. Norsworthy called the
police at approximately 10:30 p.m. on October 19, 2003 to file a stolen car report.
           During four weeks leading up to October 19, Norsworthy lent her vehicle to the
Appellant about five to six times. On many of those occasions, she had her niece go with
him because she did not trust Appellant enough to let him have the car all day. Appellant had
always asked for permission before using her car, and he had returned the vehicle to a proper
location. On the morning of October 19, Norsworthy testified that she did not give Appellant
consent to take the vehicle. Until October 19, 2003, Appellant never took a car belonging
to Norsworthy for more than two hours and had always asked for Norsworthy’s permission
before taking the car. He had fixed a borrowed car on two of these occasions.
           After the police recovered the vehicle, Norsworthy picked it up from the police
impound lot. Appellant’s belongings were inside the back of the car. Norsworthy believed
that Appellant had been living in the car. In the backseat was a blanket and a pillow.
Appellant’s belongings were not in the car before October 19, 2003. When Norsworthy
obtained her vehicle from the impound lot, the vehicle was blowing smoke away and was
shaking a lot. The vehicle appeared to have been damaged in an accident.
            Gaby Cuevas testified that she was ten years old. She was the niece of the
complainant, Sandra Norsworthy. Appellant was her stepgrandfather. Gaby lived with
Norsworthy in October 2003. She slept in the living room on October 18, 2003. Appellant
also slept in the living room on October 18, 2003. During the early morning of October 19,
2003, Gaby was awakened by a man named Jesus knocking on the door. Jesus and Appellant
spoke to each other. Gaby went back to bed. When she awoke, Appellant was sitting on the
couch. Norsworthy’s vehicle was still in front of the house but Norsworthy had left for work. 
Gaby saw Appellant go to Norsworthy’s car with a bag. She asked him where he was going
to go. He said he “was going to take the car to Sandra’s job.” No one else was awake at that
time. Appellant drove off in the car.
           Officer Julia Arrieta, with the El Paso Police Department, was on duty on October 19,
2003. The dispatcher sent her to Norsworthy’s dwelling regarding an unauthorized use of
a motor vehicle. Officer Arrieta spoke with Norsworthy and her niece, Gaby, and determined
that a crime had been committed. Norsworthy denied that she lent the vehicle to Appellant. 
She said she never gave him permission to take the vehicle. Gaby also told Arrieta that
Appellant said he was going to take the car to Norsworthy at her workplace. Arrieta wrote
a report and fowarded it to the detectives.
II. DISCUSSION
           In Issue No. One, Appellant asserts that the evidence is legally insufficient to support
the conviction. He specifically challenges the State’s proof that he intentionally and
knowingly operated the vehicle without Sandra Norsworthy’s consent. In reviewing the legal
sufficiency of the evidence, we are constrained to view the evidence in the light most
favorable to the judgment to determine whether any rational trier of fact could find the
essential elements of the offense, as alleged in the application paragraph of the charge to the
jury, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989); Humason
v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987). More particularly, sufficiency of the
evidence should be measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 239-40 (Tex. Crim. App.
1997).
           Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or
evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury
trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex. App.--El
Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.
App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843 (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of
fact, not the appellate court, is free to accept or reject all or any portion of any witness’s
testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           To support the conviction, the State is required to prove that Appellant intentionally
or knowingly operated another’s vehicle without the effective consent of the owner. Tex.
Penal Code Ann. § 31.07(a) (Vernon 2003). In an unauthorized use of a motor vehicle
case, the State has the burden to prove that Appellant not only intentionally or knowingly
operated the vehicle, but that he knew he did not have the consent of the owner. McQueen
v. State, 781 S.W.2d 600, 604 (Tex. Crim. App. 1989); Gardner v. State, 780 S.W.2d 259,
263 (Tex. Crim. App. 1989). Appellant asserts that he had consent to operate the vehicle
or, in the alternative, he had implied consent to use the vehicle because of past instances
when Appellant had borrowed the vehicle and had effected repairs on the vehicle. Sandra
Norsworthy testified unequivocally that she did not give Appellant permission to use her car
on October 19, 2003. She explained that she needed her car to go to work that morning, and
would not have lent it to Appellant even if he had asked to use it.
           When viewed in the light most favorable to the jury’s verdict, Norsworthy’s testimony
that she did not give Appellant permission to use her car was, by itself, sufficient proof that
Appellant knew he did not have her consent to operate her vehicle. See McQueen, 781
S.W.2d at 604-05 (owner’s testimony that he did not give defendant permission to use his
motorcycle is sufficient to prove that defendant knew he did not have the consent to use the
motorcycle); Walker v. State, 846 S.W.2d 379, 382 (Tex. App.--Houston [14th Dist.] 1992,
pet. ref’d). White v. State, 844 S.W.2d 929, 932 (Tex. App.--Houston [1st Dist.] 1992, pet.
ref’d). The State proved through the testimony of the complainant that she had not given
consent to the accused to operate the vehicle, thereby proving from a sufficiency standpoint
that Appellant knew he did not have the complainant’s consent to operate the vehicle. In
short, any rational fact finder could find, from Norsworthy’s testimony alone, that Appellant
knew he lacked consent to operate her car.
           Regarding Appellant’s contention that he had implied consent to operate the vehicle,
we note that Appellant kept the vehicle for a much longer period of time than he had in the
past, and he stated to the child that he was taking the vehicle to the complainant’s workplace,
which never occurred. Furthermore, the fact finder was free to reject the contention that
Appellant had implied permission to operate the vehicle. McQueen, 781 S.W.2d at 605. We
find the evidence was legally sufficient to prove the elements of the offense of unauthorized
use of a motor vehicle beyond a reasonable doubt. As a result, the State’s evidence was
legally sufficient to support Appellant’s conviction for unauthorized use of a motor vehicle. 
Appellant’s Issue No. One is overruled.
           In Issue No. Two, Appellant maintains that the State filed its Notice of Enhancement
only seven days before trial began instead of the usual ten days that are presumed to be
timely for a Notice of Enhancement. On April 9, 2004, the State filed a written “Notice of
Enhancement” alleging two prior felony convictions. The trial began seven days later on
April 16, 2004. Appellant objected that the notice was not timely, and the trial court
overruled the objection. Appellant pleaded “true” to one allegation of a prior conviction, and
he pleaded “untrue” to the other allegation. Prior to the reading of the punishment charge
to the jury, Appellant again objected to the enhancement stating that the notice was untimely. 
The court overruled the objection. Appellant testified at the punishment stage of trial that
he pleaded “not true” on one of the enhancement allegations because it was his understanding
that he had not pleaded guilty to a charge because of the judge’s failure to assess concurrent
sentences.
           Appellant claims that he suffered manifest harm because of untimely filing and
because the jury found both enhancement allegations true and returned a punishment verdict
within the penalty range for a second-degree felony. An accused is entitled to notice that
prior convictions are to be used to enhance punishment. Brooks v. State, 957 S.W.2d 30, 33
(Tex. Crim. App. 1997). Ten days’ notice is presumed to be timely. See Sears v. State, 91
S.W.3d 451, 455 (Tex. App.--Beaumont 2002, no pet.). However, the timeliness of the
notice is determined on a case-by-case review with due consideration given to the particular
circumstances of the case. Barnes v. State, 152 S.W.3d 144, 146 (Tex. App.--Dallas 2004,
no pet.).
           In the present case, Appellant had seven days’ notice, and he did not present to the
court any claim that his preparation for trial was impeded in any way. In fact, it is evident
that he was cognizant of the allegations because he was able to present his defense that one
of the allegations was not proper while pleading true to the other. Accordingly, Appellant
has failed to show that the court erred in overruling his objections to the State’s notice. See
Barnes, 152 S.W.3d at 146. Issue No. Two is overruled.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice

March 30, 2006

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)